The Chief Justice
 

 delivered the opinion of the court.
 

 On the 4th January, 1800, Robert Hamilton made to Thomas Hamilton an absolute bill of sale for a slave in the bill mentioned, which on the 14th of April, 1801, was acknowledged and recorded in the court of the county in which he resided. The slave continued in possession
 
 *315
 
 of the vendor; and some short time after the bill of sale was recorded, an execution on a judgment obtained against the vendor was levied on the slave, and on some other personal property also in possession of the vendor. In July, 1801, Thomas Hamilton, the vendee, brought trespass against the defendant Russell, by whose execution, and by whose direction, the property had been seized; and at the trial, the counsel for the defendant moved the court to instruct the jury, that if the slave, George, remained in the possession of the vendor, by the consent and permission of the vendee; and if by such consent and permission the vendor continued to exercise acts of ownership over him, the vendee under such circumstances could not protect such have from the execution of the defendant.
 

 The court gave the instruction required, to which a bill of exceptions was taken.
 

 The counsel for the plaintiff then moved the court to instruct the jury that a plaintiff in trespass, whose property is loaned to a friend, and is in that friend’s possession at the time it is seized by a sheriff in virtue of an execution against the person so in possession, can sustain an action of trespass for a seizure upon such possession.
 

 The court, being divided, refused to give the instruction required, and the jury found a verdict for the defendant. Judgment was accordingly rendered for the defendant, to which a writ of error has been sued out, and the question is, whether the court below has erred in the instructions given or refused.
 

 In the opinion to which the first bill of exceptions was taken, it is contended on two grounds that the circuit court has erred.
 

 1st. Because this sale is, under the act of the Virginia assembly against fraudulent sales, protected by being recorded.
 

 2dly. That if it be not protected by that act, still it is only evidence of fraud, and not in itself a fraud.
 

 
 *316
 
 On examining the act of assembly alluded to, the court is of opinion that it does not comprehend absolute bills of sale among those where the title may be separated from the possession, and yet the conveyance be a valid one, if recorded within eight months. On this point one judge doubted, but he is of opinion that this bill of sale was not recorded within the time required by the act, and that the decision in the case of
 
 Eppes v.
 
 Randolph, which was made by the court of appeals of Virginia, on a different act of assembly, would not apply to this act.
 

 On the second point there was more difficulty. The act of assembly, which governs the case, appears, as far as respects fraudulent conveyances, to be intended to be co-extensive with the acts of the 13th and 27th of Eliz. and those acts are considered as only declaratory of the principles of the common law. The decisions of the English judges therefore apply to this case.
 

 In some cases a sale of a chattel, unaccompanied by the delivery of possession, appears to have been considered as an evidence, or a badge, of fraud, to be submitted to the jury, under the direction of the court, and not as constituting in itself, in point of law, an actual fraud which rendered the transaction as to creditors entirely void. Modern decisions have taken this question up upon principle, and have determined, that an unconditional sale, where the possession does not " accompany and follow the deed,” is, with respect to creditors, on the found construction of the statute of Elizabeth, a fraud, and should be so determined by the court. The distinction they have taken is between a deed purporting on the face of it to be absolute, so that the separation of the possession from the title is incompatible with the deed itself; and a deed made upon condition which does not entitle the vendor to the immediate possession. The case of
 
 Edwards
 
 vs.
 
 Harbin, exr. of Tempest Mercer,
 
 2
 
 Term rep.
 
 587, turns on this distinction, and is a very strong case.
 

 William Tempest Mercer, on the 27th of March, 1786, offered to the defendant Harbin, a bill of sale of sundry chattels as a security for a debt due by Mercer to Harbin. This Harbin refused to take, unless he should be permitted, at the expiration of fourteen days, if the debt should
 
 *317
 
 remain unpaid, to take possession of the goods and sell them, in satisfaction of the debt. The surplus money to be returned to Mercer. To this Mercer agreed, and a bill of sale, purporting on the face of it to be absolute, was executed, and a corkscrew delivered in the name of the whole. Mercer died within the fourteen days, and immediately after their expiration Harbin took possession of the goods specified in the bill of sale and sold them. A suit was then brought against him by Edwards, who was also a creditor of Mercer, charging Harbin as executor in his own wrong, and the question was, whether this bill of sale was fraudulent and void, as being on its face absolute, and being unaccompanied by the delivery of possession. It was determined to be fraudulent; and in that case it is said that all the judges of England had been consulted on a motion for a new trial in the case of
 
 Bamford v. Baron,
 
 and were unanimously of opinion that “ unless possession accompanies and follows the deed, it is fraudulent and void;” that is, that unless the possession remain with the person, shown by the deed to be entitled to it, such deed is void as to creditors within the statutes. This principle is said by judge Buller, to have been long settled and never to have been seriously questioned. He states it to have been established by lord Coke, in
 
 2d Bulstrode, s
 
 o far as to declare that an absolute conveyance or gift of a lease for years, unattended with possession, was fraudulent. “ But if the deed or conveyance be conditi- “ onal, there the vendor’s continuing in possession does “ not avoid it, because by the terms of the conveyance “ the vendee is not to have the possession till he has per- “ formed the condition.” “ And that case, continues, “ judge Buller, makes the distinction between deeds or “ bills of sale which are to take place immediately, and “ those which are to take place at some future time. For “ in the latter case, the possession continuing with the “ vendor till such future time, or till that condition be “ performed, is consistent with the deed, and such pos- “ session comes within the rule as
 
 accompanying and fol-
 
 “
 
 lowing
 
 the deed. That case has been universally fol- “ lowed by all the cases since.” “ This,” continues the judge, “has been argued by the defendant’s counsel as “ being a case in which the want of possession is only evi- “ dence of fraud, and that it was not such a circumstance “
 
 per se,
 
 as makes the transaction fraudulent in point of
 
 *318
 
 “ law; that is the point which we have considered, and “ we are all of opinion, that if there is nothing but the “ absolute conveyance, without the possession, that in point “ of law is fraudulent.”
 

 This court is of the same opinion. We think that the intent of the statute is best promoted by that construction; and that fraudulent conveyances, which are made to secure to a debtor a beneficial interest while his property is protected from creditors, will be most effectually prevented by declaring that an absolute bill of sale is itself a fraud, unless possession “
 
 accompanies and follows the deed.”
 
 This construction too comports with the words of the act. Such a deed must be considered as made with an intent
 
 “ to delay,
 
 hinder,
 
 or defraud creditors.”
 

 On the second bill of exceptions the court did right in refusing to give the instruction required. The question propounded seems to have been an abstract question not belonging to the cause.
 

 Judgment affirmed with costs.