most scrupulous care, its various subjects. The material man, the furnisher of supplies, and the mariner are equally protected. That credit was originally extended to the vessel in this case, is not questioned. The schedule appended to the answer, reads: "Steam Boat Fashion, to Moore & Foote, Dr. To merchandise rendered on account." To this the receipt is attached upon which the defense is based. So that the lien was in existence and recognized the day the note was given. There is no proof that it was ever waived—no proof of an intention to waive it.

The court was forcibly impressed during the hearing with the fact that the instrument was negotiable, and had been discounted, and that, therefore, as the libellants had received the money, their relation to the vessel had ceased. But the subsequent production of the note, and its tender for cancellation, removed all difficulty as to sustaining the lien. This note is not now outstanding. No innocent endorsee can be affected by the decree, nor can it be discovered how sustaining the libel on the principle stated will peril vessels hereafter by secret liens. The purchaser of a ship or any vessel afloat, purchases with a presumed knowledge of the existing legal responsibilities. The note and the lien cannot both be sustained. While the one is still current as cash, or outstanding, the other is without force or vitality; but if the former is itself dead and as waste paper, the legal existence of the latter is not impaired. Here the ship contracted the debt. That debt never has been paid. The note was but a promise to pay—a broken promise. It was made and accepted with the sole view to an extension of time. Certainly in this tribunal, as a court of equity, the respondent cannot complain of being dealt with inequitably by a decree enforcing payment of the debt of the boat from the boat; a debt not denied either in its character or amount. Decree for the entire claim and costs, and the cancellation of the note on payment of the decree.

---

### Case No. 9,772a.

#### MOORE v. PAXTON.

[Hempst. 51.] [1]

Superior Court, Territory of Arkansas. Oct., 1827.

LIMITATION OF ACTIONS—FOREIGN JUDGMENT.

1. The statute of limitations is not pleadable to a judgment rendered in another state.

2. Where process is served on the defendant, or his appearance entered to the action, the judgment of another state is conclusive; and no pleas can be interposed thereto, nor can it be impeached in any other way than it could be in the state where rendered.

[This was an action by Alexander S. Moore against Joseph Paxton.]

[1] [Reported by Samuel H. Hempstead, Esq.]

OPINION OF THE COURT. This is an action of debt brought by the plaintiff against the defendant, upon a judgment obtained in the state of South Carolina. The defendant has plead the statute of limitations, to which plea the plaintiff has demurred. The statute is as follows: "All actions of debt grounded upon any lending or contract, without specialty, shall be brought within five years after the cause of action shall accrue." Geyer, Dig. 274. This has been considered a question of great importance, and has been ably argued at the bar. We are satisfied that the statute of limitations cannot be plead to an action of debt founded on a judgment from another state, or territory, where the process was served upon the defendant in person, or his appearance entered to the action. The judgments of sister states do not stand upon the same footing as foreign judgments; but where the defendant has personal notice by the service of process, or enters his appearance, the judgment is conclusive, and cannot be inquired into in any other way than it could be in the state where the judgment was obtained, and no other pleas can be interposed thereto. This doctrine has been settled by the supreme court of the United States, in Mills v. Duryee, 7 Cranch [11 U. S.] 481, and Hampton v. McConnell, 3 Wheat. [16 U. S.] 234. The demurrer to the plea of statute of limitations must be sustained. Judgment for plaintiff.

---

MOORE (PLASTIC STATE–ROOFING JOINT–STOCK CO. v.). See Case No. 11,209.

MOORE v. REED. See Case No. 9,860.

---

### Case No. 9,773.

#### MOORE v. RINGGOLD.

[3 Cranch, C. C. 434.] [1]

Circuit Court, District of Columbia. May Term, 1829.

SALE—POSSESSION—CREDITORS.

A bill of sale of goods is void as to creditors, unless the possession accompanies and follows the deed.

[Cited in brief in Brawn v. Keller, 43 Pa. St. 105.]

Replevin of a horse taken by the defendant, as marshal, in execution against Dunning, and found in his possession. The plaintiff claimed the property under a sale from Dunning, who testified that he sent the horse to Moore, with a bill of sale; that Moore sent him back to Dunning with the bill of sale, saying that as he had no other horse, he might keep him till he (Moore) should send for him.

THE COURT (nem. con.), upon the authority of the case of Hamilton v. Russell, 1 Cranch [5 U. S.] 309, instructed the jury

[1] [Reported by Hon. William Cranch, Chief Judge.]

that the sale was void as to creditors, unless the possession accompanied and followed the bill of sale. Verdict for the defendant.

---

MOORE (ROBERTS v.). See Case No. 11,905.

MOORE (ROBINSON v.). See Case No. 11,960.

---

## Case No. 9,774.

### MOORE v. ROSENBERGER.

[27 Leg. Int. 148;[1] 7 Phila. 576; 4 West. Jur. 204.]

Circuit Court, E. D. Pennsylvania. May, 1870.

EXECUTION—LEVIED ON ONE PARTNER'S INTEREST—PURCHASER UNDER EXECUTION SALE—TITLE TO WHAT PASSES.

Under a writ of fieri facias, a levy upon and sale by the sheriff of a co-partner's interest in a firm of which he is a member, passes to the purchaser only the defendant's interest in the chattels actually seized upon the writ, and not in his interest in rights of actions or credits of the partnership.

This case originated in a petition of one John D. Rosenberger, a bankrupt, in voluntary bankruptcy. It appeared in the proceedings thereon, that about six months prior to the filing of the same. and just on the eve of a creditor's obtaining a judgment against the bankrupt, his brother, the defendant in this case, procured a judgment against him by confession. and immediately issued a fi. fa. thereon. This writ was returned by the sheriff, "Levied upon right, title and interest of defendant, in and to the firm of J. D. Rosenberger & Co., and sold the same for $50." The plaintiff in the execution became the purchaser; at the time of the sale the stock on hand of the firm was small, its principal assets consisting of its outstanding credits. These were collected in by the liquidating partner, E. B. Taggart, who having discharged the debts of the firm, shortly thereafter, paid over to the order of the purchaser at the sheriff's sale aforesaid, the sum of $4,420.65, on account of the interest of the bankrupt therein so alleged to have been sold as aforesaid.

Upon the hearing of the petition of the bankrupt for a discharge from his debts, the foregoing facts appearing, CADWALADER, District Judge, observed that the bankrupt had neither disclosed in his schedule, nor surrendered to his assignee, the proceeds of his interest in the firm of John D. Rosenberger & Co., which had not and could not have passed to the purchaser at the sheriff's sale any thing beyond the bankrupt's interest in the chattels actually seized on the fi. fa. That any notion to the contrary was one that prevailed only in Philadelphia, and here to a limited extent, and was unknown generally in the state. That it had arisen here from a clear misapprehension of some decisions of

the supreme court of Pennsylvania, which, upon examination, would appear to rather conflict with than support the position. Again, the fact that not unusually upon the sale of a partner's interest the outstanding credits were used to settle the outstanding debits of the firm, and so the chattels seized would be relieved, and that the purchaser at the sheriff's sale would almost always be entitled in equity to have the assets so marshalled, might have also had something to do with the mistake. The bankrupt's discharge was refused.

This suit was then brought by the assignee of the bankrupt against the purchaser at the sale, to recover the proceeds of the bankrupt's interest in the firm, received by him, other than such as were derived from the chattels actually levied on.

N. H. Sharpless, for plaintiff.

Geo. W. Thorn, for defendant.

McKENNAN, Circuit Judge, and CADWALADER, District Judge, were both clearly of the opinion theretofore expressed by Judge CADWALADER in the court of bankruptcy; and Judge McKENNAN said, that the law certainly had been so understood in the Western district.

Upon another point arising in the case a juror was withdrawn.

---

MOORE (RUTHERFORD v.). See Cases Nos. 12,173 and 12,174.

---

## Case No. 9,774a.

### MOORE v. SEARCY.

[Hempst. 52.][1]

Superior Court, Territory of Arkansas. April, 1828.

LIENS — DEBT DUE TO TRUSTEE BY CESTUI QUE TRUST—CLAIM OF TRUSTEE TO BE FIRST SATISFIED.

1. S. having the legal title to land, but one half of it in equity belonging to C. deceased, cannot have a debt against C. satisfied out of the land, to the exclusion of other creditors, but must come in equally with them.

2. The land decreed to be sold for the benefit of all the creditors.

Bill in chancery.

Before JOHNSON, ESKRIDGE, and TRIMBLE, JJ.

OPINION OF THE COURT. This is a suit in chancery brought by Thomas Moore, administrator of the estate of Thomas Curran, deceased, to coerce the conveyance of certain real property, namely, one undivided half of the east half of the north-east quarter of section ten of township thirteen north, in range six west, containing eighty acres, more or less; also the one half of forty acres of ground, more or less, of section seventeen of township thirteen north, in

---

[1] [Reprinted from 27 Leg. Int. 148, by permission.]

[1] [Reported by Samuel H. Hempstead, Esq.]