| 49 | 229 |
| f85 | 826 |

## J. N. CARLISLE et. al. v. R. M. TINDALL et. al.

1. CLOUD ON TITLE—CONSTRUCTION OF STATUTES.—The statute Code, 1871, § 975, for "removing clouds," etc., only enlarges the jurisdiction of the chancery court, as it obtains, for the purposes of "*quia timet*" bills, and hence must be construed in the light, and by the aid, of the doctrines and principles pertaining thereto.

2. SAME—SAME—REAL OWNER.—The idea is definitely conveyed, that the remedy is only intended for the *real owner*, whether by legal or equitable title, whether in possession or out; and though the limits of the jurisdiction thus conferred, are not as yet accurately defined, yet it was not designed to oust the courts of law of the right to try legal titles.

3. STATUTE OF FRAUDS—FRAUDULENT DEBTOR.—CONVEYANCE BY.—The statute of frauds includes only those conveyances, made by the debtor in fraud of his creditors; but purchases made with the debtor's means, in the name of a third person, are not within the statute.

4. SAME—EQUITABLE ASSETS—HUSBAND AND WIFE.—The purchase of property by the wife with means furnished by the husband, with the intent to evade his creditors, is such an investment of his means, as may be pursued by appropriate remedy by his creditors, but does not vest any title, legal or equitable, susceptible of being conveyed by sheriff's deed under execution, and of being perfected by a court of equity.

5. SAME—SAME—TRUSTEE.—It is not agreed upon what precise ground equity proceeds to subject property, thus situated, but it is conceded, that if the means of a debtor is converted into property in the name of his wife, or other grantee, with a view to evade his creditors, then such grantee shall be esteemed as holding the property *in trust*, to the extent of the means so employed, for the benefit of his creditors, and hence cannot be reached by execution.

Appeal from the chancery court of Chickasaw county, Hon. AUSTIN POLLARD, Chancellor.

The facts of the case sufficiently appear in the opinion of the court.

*Fred. Beall*, for appellants:

The defendant, R. M. Tindall, could not under our statute have conveyed his property to his wife, M. A. Tindall, at the time that he did, and invest his wife with a valid, good title. Code, p. 376, § 1778.

If then, a deed made direct to Mrs. M. A. Tindall, by her husband, R. M. Tindall, under the circumstances, would have been void as against the creditors of R. M. Tindall, certainly the deed made by Mrs. Kerm Cain to Mrs. M. A. Tindall, wife of R. M. Tindall, was also void as against creditors of R. M. Tindall, and the title to the lot was held by Mrs. Tindall for her husband's use to the extent of the claim of the creditors of R. M. Tindall, who were such at the time he caused Mrs. Cain to make his wife a deed to the lot; and R. M. Tindall had no equity in the lot conveyed to Mrs. Tindall by Mrs. Cain, liable to be taken in execution and sold by the sheriff. Code of 1871, p. 501, § 2295; Carpenter v. Brown, et. al., 42 Miss., 28.

Whatever rights the creditors had, passed by the sheriff's sale to Carlisle & Carlisle, and they were thereby subrogated

to all the rights of the judgment creditors. The prayer of the bill is not only for the specific relief, to clear the title of Carlisle & Carlisle of all claims, but also for general relief; and under the latter prayer, the court could have caused the title to the lot to have divested out of Mrs. Tindall, and invested in a commissioner, who should have been required to make a deed to Carlisle & Carlisle.

Mrs. Tindall was trustee for her husband. R. M. Tindall purchased the property with his own means. If one buys lands in the name of another, and pays the consideration money, the land will be held by the grantee, in trust for the benefit of him who advanced the money. Wilson v. Beauchamp, 44 Miss., 568; McCarroll v. Alexander, ib., 135. There can be no doubt that there was a complete equity, and that the land in controversy could be sold.

*Sale & Dowd* for appellees:

1. The statute, Code of 1871, § 975, was not designed to abolish the common law action of ejectment, nor to supply a substitute for the usual bill in equity by creditors, to subject equitable assets to the payment of debts; but only extends to claimants, out of possession of the premises. The benefit of the old equitable remedy to remove clouds in the nature of a *quia timet,* which could only be maintained by a claimant in possession, and who might not, therefore, vindicate his superior title by ejectment at law. It is indispensable that complainant shall develop a perfect legal or equitable title, as against the world. Banks v. Evans, 10 S. & M., 35; Boyd v. Thornton, 13 ib., 338; Toulmin v. Heidleberg, 32 Miss., 268; Kerr v. Freeman 33 ib., 292; Huntington v. Allen, 44 Miss, 564.

2. If Tindall had ever held the legal title to the lot, but had fraudulently conveyed it away, then, the conveyance being void for the fraud, the lot would still remain subject to execution at law as if unconveyed, although equity would interfere to cancel the conveyance, in order to remove obstructions to a fair and free sale. Vasser v. Henderson, 40

Miss., 519; Coleman v. Rives, 24 Miss., 634; Fowler v. Mc-Cartney, 27 Miss., 509; 1 Am. Lead Ca's, (ed. 1851) 77, 79; Hilzheim v. Drane, 10 S. & M., 556.

3. The chancery court cannot create a title *in toto* for the complainants, but can only perfect and complete an inchoate title already acquired, and susceptible of being thus perfected. As purchasers at sheriff's sale, they do not present a sufficiently clear record as to the legal fairness of the transaction. Twenty-five dollars, upon judgments for over five hundred dollars, is not such an adequate price as will invite the extraordinary interference of a court of equity, in aid of a mere speculation of the lucky purchaser. Huntington v. Allen, 44 Miss., 666, 667. The statutory jurisdiction of bills to remove clouds, etc., in favor of claimants out of possession, and who may, therefore, bring ejectment, is limited in its operation, and does not draw to itself the usual equity jurisdiction to administer " such other further and general relief, as to the chancellor may seem, meet, just and equitable," Ezelle v. Parker, 41 Miss., 530.

SIMRALL, J., delivered the opinion of the Court:

The complainants, who are purchasers at sheriff's sale, under judgments secured against R. M. Tindall, of lot No. 109, in the town of Okolona, seek by their bill to displace, cancel and annul, the deed from Mrs. Cain to Mrs. Tindall. The averments are that Tindall, being pressed by creditors with suits, before the judgments were obtained, " set about putting his property in a situation that could not be reached by his creditors; and, to hinder and defraud them, he did, on the 1st day of April, 1872, negotiate an exchange of his undivided interest in lot No. 10, to Mrs. Kern Cain, for lot No. 109." Lot 109 was valued at $400, and the undivided half of lot 10 was valued at $200. Mrs. Cain conveyed to Mrs. Tindall, wife of R. M. Tindall, lot 109, in consideration of a conveyance, by R. M. Tindall to Mrs. Cain, of the undivided half of lot 10. The difference in the estimated value of the two

lots being paid in cash. The complainants insist that this was a fraudulent arrangement by R. M. Tindall towards his creditors, especially the creditors under whose judgments they purchased, and that the deed to Mrs. Tindall ought to be held and considered as utterly void, and should be displaced as a "cloud" upon their title, acquired by their purchase.

The enlarged jurisdiction conferred by the statute, (Code of 1871, § 975,) upon the chancery court, at the suit of the "real owner," to remove the "cloud," "doubt" or "suspicion," cast by "a deed or other evidence of title," upon the true title, must be considered in the light, and by the aid of the doctrines of a court of equity, as applied to such *quia timet* bills.

The statute gives the jurisdiction to the "real owner," whether he be in possession, or threatened to be disturbed in his possession.

The idea is distinctly conveyed by the language of the statute, that the complainant must be the real owner, by legal or equitable title; and such has been the interpretation of it. Banks v. Evans, 10 S. & M., 62; Boyd v. Thornton, 13 S. & M., 344; Huntington v. Allen, 44 Miss. Rep., 662–3.

It has not yet been exactly defined, within what limits the jurisdiction may be exercised. It could not have been designed to draw into a court of equity, contestation about the relative value and merits of legal titles, so as to oust the court of law and jury, of the right to try legal titles; especially if a suit were already pending at law. But in every case the complainant, who comes into the court, upon a legal title, must be prepared to show its validity; and that the opposing deed or other evidence, or pretense of title, is, only apparently, but not substantially efficient to overcome it.

At the time the judgments were received, the legal title to lot 109 was in Mrs. Tindall, and not in her husband. Indeed, R. M. Tindall never was owner, legal or equitable, of that lot. The complainants have framed their bill on the

theory of assailing a conveyance, made by the judgment debtor, as fraudulent against creditors. The statute of frauds and perjuries, condemns every gift, grant, conveyance, * * had or made, to hinder and defraud creditors, as utterly void. In so far as the judgment creditor is concerned, it is as though the conveyance had never been made, and the title were still in the debtor, the fraudulent grantor.

But, so far from R. M. Tindall having made a fraudulent grant of lot No. 109, the complainants do not show that he ever had any interest, legal or equitable, in that property. The judgment against R. M. Tindall, did not operate as a lien on this lot, as would have been the case if Tindall had been a fraudulent grantor of the property to his wife. In such circumstances, a purchaser under the judgments, might have recovered in ejectment, on the ground that the conveyance was void, and passed no title as against the creditors; or he might have brought his bill to cancel the deed to the wife.

The conveyance made by Mrs. Cain to Mrs. Tindall, is not within the statute of frauds and perjuries. Neither the statute of 13th Elizabeth, or our statute, which is a substantial transcript in this respect, include any other conveyances, than those made by the grantor, in fraud of his creditors. But R. M. Tindall did not convey the lot in dispute, to his wife. Under the statute, that deed could only be assailed by the creditors of Mrs. Cain; on the allegation that she was instigated by covin and fraud. The statute only takes effect on conveyance made by the fradulent debtor. Lamplugh v. Lamplugh 1 P. Williams, 111; nor are purchases made with the debtor's money, in the name of a third person, within the statute. Crazier v. Young, 30 Monroe, 157. Gowing v. Rich, 1 Ired Law Rep., 553. If R. M. Tindall had no title to the premises, none passed to the complainants by the sheriff's deed; and they have, therefore, no right to a cancellation of the deed, from Mrs. Cain to Mrs. Tindall.

If it be true, that R. M. Tindall made the exchange with

Mrs. Cain, of his undivided half of lot 10, for lot 109, had the legal title of the latter placed in his wife, with t intent, and for the purpose of evading his creditors, the there would have been an investment of his means in lot 109, which his creditors might have pursued, and subjected to their debt. If a debtor takes money or property which ought to be devoted to his debts, and converts and invests it in other property, in the name of his wife, that is a transaction, not sustained by fairness or morality, and is condemned by the common law. It is an old maxim, that fraud vitiates every transaction into which it enters.

There has been a difference in the courts, as to the precise ground and principle, upon which equity proceeds to reach and subject property, thus situated, to creditors. This much seems to have been concurred in: That if the circumstances clearly indicate that the provision for the wife was contrived and intended to evade the just demands of creditors, then to the extent of the debtor's means thus employed, the grantee shall be esteemed as holding the property in trust for the creditors. Fletcher v. Sidley, Vernon, 409; Lloyd v. Read, 1 P. Williams, 607; Pole v. Pole, 1 Ves., 76; Roberts on Frauds, 425.

The principle was aptly stated by Underwood, J., in Doyle v. Sleeper, 1 Dana, 544, that it was fraudulent in a debtor, to disable himself to pay his debts by disposing of his money or property, so that it cannot be reached by legal process. And it is fraudulent for a person to accept, and hold as a gift, the property of another, and thereby defeat the payment of pre-existing debts. If the means of the debtor have been converted into property for the donee, the creditor may pursue the debtor's funds into the land and subject them. Upon whatever theory the Chancellor proceeds, the fundamental principle is, that the debtor cannot purchase property for his wife, so that she may hold it in defiance of his creditors; such purchases of lands, though not within the statute of frauds, are condemned by the common law.

at it is manifest that in this aspect of the subject, as it ses out of the allegations of the bill, the complainants are not entitled to relief.

There is no error in sustaining the demurrer to the bill, and dismissing it.

The decree is affirmed.