## MARTHA A. PARTEE, ADMINISTRATRIX, v. JOHN E. MATHEWS ET AL.

1. PRINCIPAL AND SURETY.   *Subrogation.*   Code 1871, § 2258.
    The administratrix of a deceased co-surety on a promissory note paid off and satisfied the amount of a judgment recovered by the creditor against the principal debtor and sureties on the note.   *Held*, that on conforming to the requirements of § 2258, Code 1871, she became subrogated to the place and rights of the original creditor, but to no more.   The judgment passed with all its privileges and infirmities.

2. LIMITATION OF ACTION.   *Where surety pays off judgment.*
    The Statute of Limitations, as affecting the right of the representative of a surety on a promissory note, who has satisfied the amount of a judgment recovered thereon by the original creditor against the principal debtor and sureties, to enforce the judgment for contribution against a co-surety, begins to run from the date of the judgment,

and not from the time of payment to the creditor; and where more than seven years have elapsed since the rendition of the judgment, before the filing of a bill in equity for relief on the same, and this appears on the face of the bill with no allegation to take the case out of the statute, a demurrer, setting up the statute, should be sustained.

3. LIMITATION OF ACTIONS.  *Scire facias to revive judgment.  Act of 1844 contrasted with Code* 1857 *and* 1871.  *Quære.*

The eighth article of the act of 1844 differs from the provisions in the Codes of 1857 and 1871 in that the act of 1844 applied the same bar of the Statute of Limitations to a *scire facias* to revive a judgment as it did to an action of debt on the judgment, while in the two latter codes the *scire facias* is omitted from the statute.  *Quære,* how far are the decisions of this court on the former statute applicable to the latter two.

4. CHANCERY.  *Creditor's bill.  Lien necessary.*

No creditor but one who has a lien by judgment or otherwise, in full force at the time the bill is filed, can attack in equity a transfer of property as fraudulent.

5. SAME.  *Distinction between equitable and legal assets.*

There is a distinction between equitable and legal assets as to the mode of reaching them by a judgment creditor.  In the former case he must exhaust legal means by issuance of execution and return of *nulla bona.*  But if the property is legally liable to execution, and the object is to remove a fraudulent conveyance, a judgment which acts as a lien on the property sought to be charged is sufficient.

6. FRAUDULENT CONVEYANCE.  *Proceedings by judgment creditor.*

Where the debtor has made a fraudulent conveyance, the judgment creditor may sell the property under execution, or he may go into chancery for the purpose of displacing the fraudulent conveyance before sale in order to realize the full value at the sale.

7. TITLE-DEED.  *Destruction of deed by vendee.  Effect on title.*

If a guardian sells, and by proper deed conveys, land to a purchaser, at a valid guardian's sale, the legal title to the land is, by the conveyance, vested in the grantee, and he cannot, by subsequently destroying the deed to himself, and procuring the guardian to make another to his wife, which is put on record, divest the title out of himself and vest it in his wife.  The grantee in the first deed is still owner in fee, and a judgment against him is a lien on the property.

8. CHANCERY.  *Bill by judgment creditor.  Limitation of action.*

Where the lien of the judgment, under § 2159, Code 1871, has expired by the lapse of seven years since the rendition of the judgment, the judgment creditor cannot maintain a bill in aid of the judgment to expose and remove clouds involving the title to the debtor's land.

9. FRAUDULENT CONVEYANCE. *Who may attack. Lien.*

    An administrator cannot maintain a bill to set aside a fraudulent conveyance made by his intestate. Only a creditor of the intestate can do that. But a judgment against the administrator, from the necessity of the case, will enable the creditor to maintain the bill so that the lands may be made assets.

APPEAL from the Chancery Court of Panola County.

Hon. J. C. GRAY, Chancellor.

*Miller* and *Miller,* for the appellant.

The seven years' Statute of Limitations runs against the complainant from the time the judgment was paid off, and not from the date of the judgment. Code 1871, §§ 2153, 2258, 2251; 5 Cushman, 94; *Johnson* v. *Pyles,* 11 S. & M. 189; 48 Miss. 139; 31 Miss. 201.

*L. C. Balch,* for the appellees.

1. The complainant cannot go into equity to enforce a judgment which is barred at law. *Edwards* v. *McGee,* 31 Miss. 143; *Fox* v. *Wallace,* 31 Miss. 660; 31 Miss. 201.

2. At the date of filing the bill there was no judgment in favor of the complainant capable of being enforced in any known legal mode. *Dozier* v. *Lewis,* 27 Miss. 679; *Conway* v. *Strong,* 24 Miss. 667; *Bowen* v. *Hoskins,* 45 Miss. 186; Code 1871, § 2153.

3. The judgment having been rendered more than seven years before Samuel Mathews's death and not kept alive by any legal means, the action is barred, and the demurrer was properly sustained. Code 1857, p. 400, art. 8; Code 1871, § 2153; *Pollard* v. *Eckford,* 50 Miss. 631, 637; *Palmer* v. *Jones,* 50 Miss. 657; *Magee* v. *Leggett,* 48 Miss. 139.

SIMRALL, C. J., delivered the opinion of the court.

Martha A. Partee, administratrix of the estate of S. B. Partee, deceased, makes this case in her bill: —

That on the 16th of May, 1868, C. B. Young, administrator *de bonis non* of James L. Brown, recovered judgment for $2,200, against John E. Mathews, principal, Samuel Mathews, and herself, as administratrix, sureties on a note made in 1861. An execution, issued the 7th of June, 1868, was returned *nulla bona.* John E. Mathews, the principal, is insolvent, and a discharged bankrupt.

In February, 1869, she, as administratrix, made final and full payment of the judgment.

On the 14th of July, 1875, she filed with the clerk of the Circuit Court an affidavit, that she, as administratrix, was the surety of John E. Mathews, and also the evidences of the payment of the judgment; whereupon an execution was issued on the same day for her use, which was returned *nulla bona.*

In June of the same year Samuel Mathews, her co-surety, died.

The complainant claims that, by reason of these premises, she has become, under the statute, owner of the judgment, assignee by operation of law, with the right to sue out final process thereon against the other defendants thereto, and to have satisfaction of the estate of her co-surety, deceased, to the extent that he was bound to contribute to her reimbursement, the principal, John E. Mathews, being insolvent and a discharged bankrupt.

She claims a right to have satisfaction of certain lands in possession of the widow and heirs of Samuel Mathews, deceased, because of these facts, as alleged.

In the fall of 1867, the said Samuel purchased the land at a guardian's sale, and received a deed. Afterwards he destroyed this deed, and induced the guardian to make another to his wife, which was put on record, but the said Samuel paid the purchase-money to the guardian. The substitution of the deed to his wife, in place of the one to himself, was a device and contrivance by the said Samuel to defeat his creditors, especially the complainant.

The prayer of the bill is, that Samuel Mathews may be declared to have been the owner of the land, and that it may be subject to pay his contributory part of the judgment to the complainant. His widow, administrator, and heirs were made defendants.

The complainant, having conformed to the requirements of § 2258 of the Code, insists that she is substituted to all the rights of the original creditor in the judgment, and may pursue whatever remedies he could have pursued to collect from the estate of the co-surety one-half the debt, interest and costs; and that to that end she ought to reach the real estate, which

the said Samuel attempted in fraud and covin to hide from his creditors.

To this bill the defendants demurred; and from the decree sustaining the demurrer, and dismissing the bill, an appeal was taken.

The special ground set up in the demurrer is that the remedy is barred by the Statute of Limitations. It need hardly be remarked that the complainant, by the merit of her payment to the original creditor, became subrogated to his place and rights as creditor, but to no more. The judgment passed with all its privileges and infirmities. The proposition advanced by counsel for the complainant is much broader than this. It is, that the Statute of Limitations, as it may affect the right to enforce the judgment, begins to run against the complainant, not from the date of the judgment, but from the time the assignment accrued, that is, from the date of payment to the creditor. If that were so, although the lien might have expired or the action of debt might be barred as against the plaintiff in the judgment, yet that result would not attach to the complainant, unless the several periods limited for these remedies had elapsed since her payment. We do not think the statute admits of that reading; but, on the contrary, the complainant would be cut off from all remedy in the judgment, or predicated of it, just as the original plaintiff would have been, if he were pursuing his judgment to satisfaction. *Dozier* v. *Lewis,* 27 Miss. 679, 683; *Conway* v. *Strong,* 24 Miss. 665, 667; *Bowen* v. *Hoskins,* 45 Miss. 183, 186.

Two sections of the Code have been referred to, prescribing a bar to the relief sought. The first is § 2153: " All actions of debt, founded on any judgment or decree rendered by any court of record in this State, shall be brought within seven years next after the rendition " thereof; " and no execution shall issue on any such judgment or decree, after seven years from the date of the issuance of the last preceding execution."

More than seven years have elapsed since the rendition of the judgment before this suit was brought.

In considering the effect of several decisions of this court, as *Vick* v. *Chewning,* 31 Miss. 201, 209, *Fox* v. *Wallace,* 31 Miss.

660, *Edwards* v. *M'Gee*, 31 Miss. 143, it must be kept in mind that these adjudications were made under the eighth article of the act of 1844, which differs from the revisions of 1857 and of 1871 in one material particular; viz., that the act of 1844 applied the same bar to the *scire facias* to revive the judgment as it did to the action of debt.   In both revisions the *scire facias* is omitted.

In *Chewing* v. *Vick*, the ruling was, that neither a *scire facias* to revive, nor debt, could be brought after seven years from the rendition of the judgment.   The doctrine of the other cases is, that although the property of the debtor has been fraudulently conveyed, yet a court of equity will not lend its aid to reach such property, if the judgment could not be enforced at law, if there had been no such obstruction.   If the judgment itself could not be the foundation of an action of debt because of the expiration of the seven years, and a *scire facias* would be defeated for the same reason, then a court of equity would not entertain the question whether or not there was fraud in the conveyance.

A court of equity has the unquestioned jurisdiction to give its aid to a creditor who has established his debt by judgment, and who encounters obstacles in the sale of property which is liable to his debt and upon which he has a lien; and in those cases where he has exhausted all legal means to procure satisfaction, but is able to point out choses in action, or interests in property, which cannot be reached at law by execution.

The doctrine of this subject has been stated by Chancellor Kent, in *Brinkerhoff* v. *Brown*, 4 Johns. Ch. 671, thus: The creditor must show that he has " taken out execution at law, and pursued it, to every available extent.   If he seeks aid as to real estate, he must show a judgment creating a lien on such estate."   In respect of personal property, he must show an execution giving preference or liens on the chattels. Story Eq. Jur. § 375, lays it down that a conveyance which obstructs satisfaction may be set aside for a creditor who " has a lien on the land; " to the same effect is 1 Paige, 305, 308; 9 Wend. 548; 7 Ala. 315; 1 Ired. Eq. 190.   The doctrine in our own books is perhaps more emphatic: " No cred-

itor but one who has a lien by judgment, or otherwise, can attack a transfer of property as fraudulent." *Hilzheim* v. *Drane*, 10 S. & M. 556, 558. In *Fowler* v. *McCartney*, 27 Miss. 509, 515, it seemed to be conceded that the judgment lien must be in full force at the time the bill was filed. *Snodgrass* v. *Andrews*, 30 Miss. 472, 489.

In *Vasser* v. *Henderson*, 40 Miss. 519, the distinction is pointed out between equitable and legal assets, as to the mode of reaching them by a judgment creditor. In the former case, he must exhaust legal means by issuance of execution and return of *nulla bona*. But if the property is "legally liable to execution," and the object is to remove a fraudulent conveyance, " then a judgment which acts as a lien on the property sought to be charged would be sufficient ; " that is, the creditor need not have gone further, as in case of equitable assets.

It is well settled that, where the judgment debtor has made a fraudulent conveyance, the creditor may sell the property under execution, or he may go into chancery for the purpose of displacing the fraudulent conveyance before sale, in order to realize the full value at the sale. *Gallman* v. *Perrie*, 47 Miss. 131, 140. The predicate of the jurisdiction is, that the creditor has a lien on the land by his judgment, and a right to sell it. *Pulliam* v. *Taylor*, 50 Miss. 551, 554; *Carlisle* v. *Tindall*, 49 Miss. 229, 232. But a Chancery Court alone can disentangle the title from the doubts and embarrassments which interfere with a realization of a fair price; and to that extent and for that purpose its assistance is asked.

The specific prayer is, that the conveyance made by the guardian to Mrs. Mathews may be held for naught and cancelled, and that the deed from the guardian to Samuel Mathews may be established. The object sought is to present a clear title to bidders, so as to obtain the value of the land. That would be accomplished by annulling the deed to Mrs. Mathews, and declaring the legal title to be in Samuel.

The relief sought is manifestly in aid of the judgment at law, as much so as if Samuel had made a fraudulent conveyance to his wife. The deed, which, the complainant alleges, was made by the guardian to Samuel, vested legal title in him.

The subsequent destruction did not divest the title. Samuel thereby became owner in fee, and the judgment against him was a lien on the property.

In case of the fraudulent conveyance by the judgment debtor, he, by force of the statute, remains owner, for the deed is declared by the statute to be utterly void as to creditors; so that the judgment imposes a lien on the property, and the aid administered in chancery is to put out of the way the embarrassment to the title by reason of the erroneous deed.

The same assistance here, in kind, is sought; that is, to bring to light the fact that Samuel was the purchaser and recipient of the title at the guardian's sale, and not his wife, as would appear from the guardian's deed to her, on record. The object in both cases is the same, — to offer a safe title to bidders, avoid future litigation, and obtain the value of the property at the sale.

We think that the lesson deduced from the authorities is, that since the lien of the judgment on the particular real estate is the predicate on which a court of equity will intervene in aid of the judgment, as by exposing and removing clouds involving the title, so, also, it will altogether refrain from intermeddling, if the lien has expired and no longer binds the property.

The lien, which continues seven years from the rendition of the judgment (Code, § 2159), expired before the complainant filed her bill.

There is a class of cases which stand on special and peculiar grounds and are properly decided, to which the reasoning in this opinion has no application. They are cases where the creditor has a judgment against the administrator, and is under a necessity to resort to chancery to set aside a fraudulent conveyance of land by the intestate. The administrator cannot assail the deed on that ground, as has been repeatedly decided, because the statute makes the conveyance good as to the grantor, his heirs and administrators. Therefore the creditor of the intestate may attack it, so that the lands may be made assets, and is the only person that can do so.                     *The decree is affirmed.*