AMOS N. BECKWITH *vs.* GEORGE A. BURROUGH *et als.*

In case of a transfer of corporate stock made with intent to hinder, delay, and defraud creditors :

*Semble,* that such transfer is void as against such creditors under the Rhode Island Statute of fraudulent conveyances.

*Held,* that such transfer is void as against such creditors at common law.

Whenever any property, tangible or intangible, becomes liable to attachment or execution for debt, it falls under the common law rules forbidding its transfer in fraud of creditors.

A. transferred certain corporate stock in fraud of his creditors. It was subsequently attached as the property of A., and after judgment against A. sold on execution. The purchaser filed a bill in equity to obtain the stock.

*Held,* that the shares of stock were liable to attachment and execution sale as the property of A. notwithstanding the prior fraudulent transfer by him.

*Held,* further, that the bill in equity should be maintained, the complainant having no adequate remedy at law, if any.

The Rhode Island Statutes providing for the attachment of corporate stock explained.

*Falk* v. *Flint,* 12 R. I. 14, limited.

BILL IN EQUITY to avoid a transfer of corporate stock. On demurrer to the bill.

The demurrer was argued April 6, 1883. Subsequently by order of the court a reargument was had December 11, 1883, on the points considered in the following opinion.

*February* 9, 1884. DURFEE, C. J. This is a suit to avoid certain transfers of corporate stock. The stock was attached on original writ in an action at law in favor of the complainant and one John T. Mauran against the defendant Burrough, and after judgment recovered against Burrough was sold on execution to the

complainant. The stock had formerly belonged to Burrough and had stood in his name on the books of the corporation, but had been transferred on the books before the attachment. The bill alleges that the transfers were made by Burrough with intent to hinder, delay, and defraud his creditors, and therefore asks to have them avoided. The case is before us now on demurrer under which three questions have been argued, to wit: *first,* does our statute of fraudulent conveyances extend to fraudulent transfers of corporate stock; and if not, *second,* are such transfers void as against creditors at common law; and *third,* are shares of corporate stock liable to attachment and to sale on execution, if they do not stand in the name of the debtor. The discussion of the two first questions discloses some diversity of decision. There are cases which apply to the statute a very liberal construction, and hold that it extends to every species of property which is liable to be taken by legal process for the payment of debts, the words " goods and chattels " being construed so as to include shares of corporate stock and *choses in action.* *Sims* v. *Thomas,* 12 A. & E. 536, 554; *Barrack* v. *M'Culloch,* 3 Kay & J. 110; *Stokoe* v. *Cowan,* 29 Beav. 637; *Pinkerton* v. *Manchester & Lawrence Railroad,* 42 N. H. 424, 457. This construction has been criticised as too lax and elastic. *Doyle* v. *Sleeper,* 1 Dana, 531. Other cases hold that the statute is simply declaratory of the common law, and that any transfer of property, which is liable to execution, if made by the owner with intent to hinder, delay, and defraud his creditors, is void as to such creditors at common law. *Cadogan* v. *Kennett,* 2 Cowp. 432; *Sturtevant* v. *Ballard,* 9 Johns. Rep. 337; *Hamilton* v. *Russell,* 1 Cranch, 309; *Clements* v. *Moore,* 6 Wall. 299, 312; *Blackman* v. *Wheaton,* 13 Minn. 326; *Hudnal.* v. *Wilder,* 4 McCord, 294; *Peck* v. *Land,* 2 Ga. 1, 10; *Fox* v. *Hills,* 1 Conn. 295; *Lillard* v. *McGee,* 4 Bibb, 165; 1 Story Eq. Juris. § 352. We are inclined to think the cases first cited, notwithstanding the criticism on them, were rightly decided; but if not, we are entirely satisfied of the correctness of the opinion of Lord Mansfield, so often reiterated by learned jurists and judges, that " the principles and rules of the common law, as now universally known and understood, are so strong against fraud in every shape, that the common law would have attained every end pro-

posed by the statute." *Cadogan* v. *Kennett*, 2 Cowp. 432, 434. We think, moreover, that these principles, however it may be with the statute, are not limited in their operation by any Procrustean formula, but that, whenever any kind of property, tangible or intangible, becomes liable to be taken by attachment or execution for debt, they immediately extend to it their protection. And see *Scott et al.* v. *The Indianapolis Wagon Works*, 48 Ind. 75, 79.

We have also come to the conclusion that the shares of stock were liable to be attached and to be sold on execution, notwithstanding their prior transfer, if the transfer was fraudulent and void. It is true the statute directs that, in case of attachment on original writ or mesne process, the proper officer of the corporation shall render to the court an account on oath of what stock or shares the defendant had. Gen. Stat. R. I. cap. 197, § 9; Pub. Stat. R. I. cap. 208, § 9. From this it may be inferred that it was contemplated by the statute that the shares when attached should be in the name of the defendant. Doubtless this is what would ordinarily occur, but we do not think the inference that it *must* occur to make the attachment valid is warranted. The statute directs the affidavit, but it does not provide that a neglect to make it either invalidates the attachment or subjects the corporation to any liability. The language in *Falk* v. *Flint*, 12 R. I. 14, is too broad. It is provided in Gen. Stat. R. I. cap. 212, § 20; Pub. Stat. R. I. cap. 223, § 22, that shares of stock may be taken and sold on execution without any previous attachment, and in such a case no affidavit is required. Corporate stock has long been attachable, Digest of 1822, p. 163; but until quite recently it could not be attached on original writ unless the defendant was out of the State or concealed within it so that he could not be personally served. It is probable, therefore, that the primary purpose of the affidavit was to show whether there was any stock to be attached to give the court jurisdiction. The statutes, whether they relate to attachment or levy, all of them designate the stock simply as the stock of the defendant, not as stock standing in his name. The question is whether the stock of a debtor, which he has transferred in fraud of his creditors, is not still as to them the stock of the debtor, the same as the real estate of a debtor, which he has conveyed away in fraud of his creditors, is still as to them his real

estate, and may be attached or levied upon as such. The transfer being void as against creditors, can it not be treated by them as a nullity? We can see no good reason, if we look simply to the language of the statute, why this view, which is the logical view and the view which obtains in regard to real estate and tangible personal property, should not be taken. Is there any reason why, if we look beyond the statute to the character of the property, this view should not be taken? It may be thought that such attachments and levies, if upheld, will expose the corporation and innocent third persons to jeopardy and fraud. We think the corporation has notice enough, by the procedure prescribed for attachment or levy, to put it on inquiry, and is therefore protected if vigilant. Doubtless there is danger to innocent third persons. The fraudulent transferee having a certificate may sell the stock after attachment or levy to a *bonâ fide* purchaser, who buys trusting to the certificate. There is the same or nearly the same danger, however, when there has been no fraudulent transfer; for a debtor whose stock standing in his own name has been attached or levied on still retains his certificate, and may sell his stock to a *bonâ fide* purchaser, who buys in ignorance of the levy or attachment, trusting to the certificate. It seems clear, therefore, that these dangers afford no sufficient reason for any distinction in this respect between corporate stock and other personal property. The defendant calls our attention to the case of *Van Norman* v. *Jackson Circuit Judge*, 45 Mich. 204, in which it was decided that, under the statute of Michigan, shares of corporate stock are not liable to attachment or levy on writ or execution unless they stand in the name of the defendant in such writ or execution. The decision, however, seems to rest mainly on certain words or phrases and on a provision in the Michigan statute which are not in ours. The provision referred to makes it the duty of the officer selling the stock to leave a certified copy of the execution and of his return thereon with the corporation, and thereupon entitles the purchaser to a certificate of the shares bought by him upon paying the fees therefor and for recording of the transfer. Such a provision imports that the title must pass by the sale, and therefore implies almost of necessity that the shares of stock to be liable to the sale must stand in the name of the debtor so that no

question of fraud can remain for settlement. Our statute simply requires the corporation to record the sheriff's deed ; it does not require the corporation to recognize the purchaser as a stockholder by issuing a certificate of stock to him. Under a statute of Indiana corporate stock may be taken on execution. In _Scott et al._ v. _The Indianapolis Wagon Works_, 48 Ind. 75, 79, which was a suit in equity by a judgment creditor for stock fraudulently transferred by the debtor, the court, while sustaining the suit, remarked that " notwithstanding the transfer of the stock by the execution defendant, the sheriff may still levy upon and sell it, when it has been fraudulently assigned by the debtor." See, also, _State, Bush_ v. _Warren Foundry & Machine Co._ 32 N. J. Law, 439.

The defendants contend that the complainant, as purchaser at the execution sale, cannot maintain a suit in equity to avoid the transfers as fraudulent. They contend that if such a suit was to be brought, it should have been brought by the complainant and his co-plaintiff at law, as judgment creditors, in aid of their execution, after levy and before sale, so that a fair sale could have been had. There is some plausibility in this argument, for doubtless the stock would have sold better if the transfers had been first avoided ; but if the transfers are fraudulent the defendants are to blame for their being so, and therefore if they suffer in consequence of it, they have no right to complain. _Hildreth_ v. _Sands_, 2 Johns. Ch. 35, 50. The cases are in conflict upon the question whether equity will aid a purchaser of real estate at an execution sale by avoiding conveyances previously made by the judgment debtor in fraud of his creditors. There are cases which hold that the purchaser is as much entitled after sale, as the creditor before sale, to maintain the suit. _Hildreth_ v. _Sands_, 2 Johns. Ch. 35 ; _Sands_ v. _Hildreth_, 14 Johns. Rep. 493 ; _Gallman_ v. _Perrie_, 47 Miss. 131; _Pulliam_ v. _Taylor_, 50 Miss. 551 ; _Frakes_ v. _Brown_, 2 Blackf. 295 ; _Harrison_ v. _Kramer_, 3 Iowa, 543 ; _Gerrish_ v. _Mace_, 9 Gray, 235 ; _Murphy_ v. _Orr_, 32 Ill. 489 ; _Tappan_ v. _Evans_, 11 N. H. 311. On the other hand, there are cases which hold that equity will not interpose, or at least not until the purchaser has first obtained possession at law. _Cranson_ v. _Smith_, 47 Mich. 189 ; _Thigpen_ v. _Pitt_, 1 Jones Eq. 49 ; _Smith's Executor_ v. _Cockrell_, 66 Ala. 64. The ground on which courts

that refuse aid do so is that the action of trespass and ejectment for possession affords an adequate remedy at law. In the case at bar the complainant cannot maintain any action at law against the fraudulent transferee for possession, and if he has any remedy at all at law, he has no adequate remedy. We think, therefore, that whatever the true rule may be in regard to purchasers of real estate, the suit here should be maintained.

*Demurrer overruled.*

*James M. Ripley & John D. Thurston,* for complainant.
*Rollin Mathewson & Nathan W. Littlefield,* for respondents.